# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) |                     |
|---|---|---|
|                          | ) |                     |
| v.                       | ) |                     |
|                          | ) | Criminal No. 10-22  |
| CHRISTOPHER BEARDSLEY,   | ) |                     |
|                          | ) |                     |
| Defendant.               | ) |                     |

## MEMORANDUM ORDER

On March 26, 2010, Defendant Christopher Beardsley ("Defendant") waived prosecution by indictment and pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(b), for which he was sentenced on December 20, 2010, to a term of 36 months' imprisonment followed by a 10-year term of supervised release.

In May 2019, the Probation Office alleged in a supervised release violation petition that Defendant violated certain conditions of his supervision.[1] (Docket No. 90). At a hearing held on August 21, 2019, the Court found that Defendant violated the conditions as alleged, revoked his supervised release and sentenced him to a term of one-day imprisonment[2] followed by three (3) years' supervised release with the first nine (9) months to be served in community confinement at Renewal, Inc. (Docket Nos. 104, 105). The Court's Judgment requires Defendant to abide by all of Renewal's rules while housed at that facility. (Docket No. 105 at 4).

---

[1] The petition alleged that Defendant violated the conditions requiring him to answer truthfully all inquiries by his Probation Officer and refrain from associating with children under age 18, except for brief, unanticipated and incidental contacts.

[2] The Court notes that it acted with significant lenity due to the facts and circumstances of Defendant's case in sentencing him to one-day imprisonment, as the applicable statute authorized a term of up to twenty-four (24) months' imprisonment and the advisory guidelines range for imprisonment was three (3) to nine (9) months.

1

As relevant here, Renewal requires a federal resident who is employed to pay a subsistence fee of 25% of his gross income to encourage fiscal responsibility.[3] *See Renewal, Inc. Federal Reentrant Guidebook* (Jan. 2017) (hereinafter, "*Guidebook*") at 18, 20. The Court recognizes that Renewal has the authority to impose such a fee on federal residents. *See Murray v. Grondolsky*, 369 F. App'x 318, 320 (3d Cir. 2010) ("The subsistence program, which requires inmates to pay a portion of the cost of the RRC, is a condition of placement in the RRC imposed to encourage financial responsibility in order that inmates may reintegrate into society. The subsistence program arises from BOP policy and emanates from the BOP's general statutory authority to manage the prisons.").

On September 17, 2019, Defendant filed a Motion to Order Renewal to Waive Subsistence Fee, claiming that the fee would create an undue financial hardship on him and his wife. (Docket No. 108). Defendant approximated that his prior month's wages were $3,174.36 and his monthly expenses were $2,620.79, thus he had $553.57 to pay for food, clothing and other unforeseen expenses. (*Id.* ¶ 3). Other than offering to supply the Court with a copy of his income and monthly expenses if requested, (*see id.*, n.1), Defendant did not initially provide any additional information or documentation to substantiate his assertion that the fee would create a financial burden for him.

The Government and Probation Office objected to Defendant's request to waive the subsistence fee, arguing that the fee is an important aspect of Defendant's sentence because it provides additional incentive for him to adhere to the conditions of his supervision upon release from residential housing. (Docket No. 110, ¶ 4). The Government observed in its response that Defendant earns a good living and some of his monthly expenses are discretionary, such as a loan payment for a second vehicle even though Defendant's wife does not drive. (*Id.* ¶ 5). In order to

---

[3] In addition to wages from employment, the subsistence fee can include the sale of property, VA benefits, workmen's compensation, retirement or social security. *See Guidebook* at 20.

accurately calculate Defendant's household income, the Probation Officer attempted to obtain information from defense counsel concerning his wife's monthly disability income but did not receive a response concerning that matter. (*Id.* ¶ 6).

In reply, Defendant argued that it would be fundamentally unfair for Defendant's wife to pay their regular monthly expenses with her disability payment given that she is not under supervision. (Docket No. 117 ¶ 1, n.1). Defendant also clarified that his wife's mother uses the second vehicle they own to drive his wife when she has transportation needs. (*Id.* ¶ 3). Finally, Defendant claimed that he provided a good faith estimate of his income, but he anticipates that his work hours will decrease due to winter weather conditions and because he must miss work on occasion to attend group treatment or training classes. (*Id.* ¶ 4).

In order to properly consider Defendant's motion, the Court requested defense counsel to provide documents concerning Defendant's monthly income and expenses. Those documents included the following:

- Paychecks from the weeks of July 29, 2019, August 5, 2019 and August 12, 2019, indicating that Defendant's gross pay was $1,268.80, 1,038.11, and 1,176.62, respectively.

- A handwritten note dated August 27, 2019, signed by "The Beardsley's," indicating that an unspecified neighbor agreed to cut grass at their property for the months of September and October 2019 and resume in March 2020 and shovel snow as needed at a rate of $200 per month. There is no accompanying invoice, receipt or other verification for these services from the neighbor.

- Another handwritten note dated August 27, 2019, signed by "The Beardsley's," stating that they spoke to someone at a Downtown Pittsburgh parking garage, who

3

indicated that parking "would be $150 a month minimum." Again, there is no invoice, receipt or other documentation to substantiate this fee.

- Monthly credit card and utility bills from Bank of America (automobile loan payment for 2017 Elantra showing a principal balance of $11,309.13 and a monthly payment of $223.66), Ally (automobile loan payment for 2018 Chevrolet truck showing a balance of $6,675.20 and a monthly payment of $160.99), Amica ($245.38 for automobile insurance for both vehicles), Verizon Fios ($183.50 for television, internet and home telephone), Verizon Wireless ($128.30 for cell phone service), People's Gas ($141), Wilkinsburg Penn Joint Water Authority ($45.04), Discover (credit card balance of $5,025.33 with a minimum payment of $101), Guitar Center/Synchrony Bank (credit card balance of $1,833.54 with a minimum payment of $85), Borough of Pitcairn ($93.84 for electric and trash), mortgage (principal balance of $55,037.86 with a monthly payment of $516.08), Comenity – Kay Jewelers (credit card balance of $1,784.01 with a minimum payment of $90), and child support ($200 per month).

Although the Court does not have the resources to investigate each of Defendant's expenditures, the Court has reviewed his monthly expenses and finds them to be reasonable overall, except for the unverified expenses for lawn services and parking in Downtown Pittsburgh.[4] The Court recognizes that Defendant's wife is disabled and may require transportation assistance, which justifies ownership of a second vehicle for someone to utilize when driving her to

---

[4] Given that grass cutting season has now ended, Defendant's assertion that lawn services will cost $200 per month appears to be an inflated expense. Additionally, it seems highly unlikely that the neighbor who has agreed to shovel snow will charge Defendant and his wife $200 per month to do so, as snow shoveling will only have to be performed as needed. As to parking in Downtown Pittsburgh, the Court is cognizant of the cost of parking but notes that Defendant has not provided any documentation to substantiate his claimed parking expense, other than his own handwritten note.

appointments since Defendant requires his own vehicle to commute to work. It is also essential for Defendant to meet his child support obligation each month and to continue paying his legitimate household expenses and utility bills so that he and his wife can maintain their residence. Given the nature of Defendant's work in the construction field, his earnings may decrease in the winter months, but any decrease could be offset by him obtaining unemployment compensation if he qualifies. Furthermore, the Probation Officer advised that Renewal has not required Defendant to pay the subsistence fee for the past two months while his motion was being litigated thus resulting in a financial windfall for that period.

Against this background, the Court must determine whether the subsistence fee should be waived as Defendant urges. To that end, the Court has considered the various cases referenced by the Probation Officer and defense counsel wherein other judges of this Court have authorized waiver of Renewal's subsistence fee.[5] Notably, in those cases, the defendant did not have a job, a residence, or both, thus the subsistence fee was waived so that he could save money in order to obtain appropriate housing upon release. Unlike those cases, Defendant is employed with a good paying job and owns a residence. Accordingly, the Court believes that Defendant should be

---

[5] In response to the Court's email inquiry, the Probation Officer explained that the subsistence fee has been waived for the following reasons: (1) an individual is employed but he has a large outstanding restitution balance; (2) an individual is employed but he is placed at Renewal because he has inadequate housing. In that instance, the fee is waived to enable the individual to save money for funding initial and ongoing housing costs. As an example of this, the Probation Officer pointed to *United States v. Brian Love*, Crim. No. 08-286 (Docket No. 52) (observing that the defendant did not have a viable home plan and required additional time to save money to secure housing); and (3) an employed individual is placed at Renewal for a sanction but he has to continue paying his existing housing costs to maintain his residence and he has minimal or no funds remaining after paying his expenses. The Probation Officer noted this was the situation in *United States v. Andrew Dahmen*, Crim. No. 12-82 (Docket No. 62), where the defendant was housed at Renewal as a sanction and was earning only $7.25/hour plus tips.

Examples provided by defense counsel include: *United States v. Eric Robertson*, Crim. No. 04-223 (Docket No. 75) (noting that the defendant had been in and out of several community homeless shelters and did not have a suitable residence); *United States v. Brian K. Dagostino II*, Crim. No. 09-42J (Docket No. 122) (observing that the defendant did not have a viable home plan and would require assistance to obtain housing); and *United States v. Charles W. Busatto*, Crim. No. 10-18J (Docket No. 84) (specifying that the defendant did not have an acceptable residence and required additional time to save money to obtain suitable housing).

required to pay some portion of the subsistence fee because his situation is markedly different from those cases where a fee waiver was granted.

In addition to Defendant's financial wherewithal to pay a subsistence fee, his compliance with this requirement is also mandated by the Court's Judgment which provides that he shall abide by all of Renewal's rules. (Docket No. 105 at 4). Those rules explicitly require a federal resident to pay a subsistence fee of 25% of his gross income. *See Guidebook* at 18, 20. Moreover, the Probation Officer provided the Court with Renewal's Work Release Agreement signed by Defendant on September 6, 2019, wherein he acknowledged at paragraph 8 that "[r]eentrants must submit each pay stub and a money order for 25% of their gross wages immediately upon receiving their paycheck. Failure to pay subsistence may result in program termination." Defendant also agreed at paragraph 15 to "turn over [his] pay stub and a money order for 25% of [his] gross wages immediately upon receiving [his] paycheck." Finally, Defendant's signature on the Work Release Agreement affirmed his understanding that any violation of its terms can result in his immediate removal from Renewal.[6]

Having concluded that Defendant must pay the subsistence fee, the Court next considers whether he should pay 25% of his gross income or a reduced fee. That decision is informed by the financial documents provided by Defendant's counsel referenced above, as well as a Renewal budget form completed by Defendant, which the Probation Officer provided to the Court. For the period September 9, 2019 to October 6, 2019, Defendant's budget indicates that his income was

---

[6] The Probation Officer also provided the Court with Renewal's Financial Agreement, which Defendant did not sign. The Financial Agreement repeats that the individual agrees to "turn in 25% of [his] gross wages to the Administration of Renewal, Inc. by the way of [his] Case Manager." It is irrelevant that Defendant refused to sign the Financial Agreement because the Court's Judgment requires him to abide by all of Renewal's rules, which includes paying a subsistence fee. Additionally, Defendant signed Renewal's Work Release Agreement pursuant to which he agreed to pay the fee.

6

$3,363.04 and his total expenses were $3,363,[7] leaving him with a bottom line of $0. Defendant incorrectly tabulated his expenses – they total $3,240, not $3,363 thus leaving $123. *See supra* n.7. Additionally, some expenses on Defendant's budget appear to be inflated in comparison to his financial documents provided by defense counsel. For instance, Defendant's documents indicate that his mortgage payment is $516.08, not $600 as he indicated on his budget, leaving him with an additional $83.92. His cable, internet and cell phone bills total $311.80, not $350, for an additional $38.20. And, his automobile payments and insurance total $630.03, but his budget lists $900. The Court recognizes that gas is included in the budget of $900 but has no way to verify whether Defendant and his wife spend $269.97 per month on gas. Again, the Court does not have the means to investigate the accuracy of each listed expense but notes that some discrepancies exist.

Based upon the available information, Defendant has some funds remaining after paying his legitimate monthly expenses. As such, the Court finds that it is reasonable for Defendant to pay a subsistence fee of 10% of his ***gross income,*** which includes his wages from employment, as well as any unemployment or other benefits and compensation that he receives. For instance, based on monthly income of $3,363 as reported on Defendant's Renewal budget form, 10% of that figure is $336.30 per month or $84.08 per week. The Court understands that Defendant's salary may fluctuate in the coming months but concludes that a 10% subsistence fee will not present an undue financial hardship to him for the reasons explained herein.

---

[7] Defendant listed the following expenses: $600 for mortgage; $900 for two car payments, insurance and gas; $260 for utilities; $350 for subscriptions such as cable, internet and cell phone; $300 for groceries; $30 for medical; $100 for dining and entertainment; $400 for debt payments such as credit card bills; $100 for savings and $200 for child support. These figures total $3,240, not $3,363 as listed on Defendant's budget form.

Based on the foregoing, the Court enters the following Order:

AND NOW, this 13th day of November, 2019, IT IS HEREBY ORDERED that Defendant's Motion to Order Renewal, Inc. to Waive Subsistence Fee (Docket No. 108) is DENIED to the extent he seeks a complete waiver of the fee; however, the Court orders that the subsistence fee is REDUCED from twenty-five percent (25%) to ten percent (10%) of Defendant's gross income as defined above. IT IS FURTHER ORDERED that Defendant shall pay the subsistence fee of ten percent (10%) of his gross income consistent with Renewal's rules and requirements relative to payment of said fee.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior United States District Judge


cc/ecf: All counsel of record